311-8262, State of Illinois, I believe, is here to give evidence. Staff, please, appellate by Sean Conley. Mr. Conley? Your Honors, Counsel, may it please the Court, my name is Sean Conley. I'm with the Office of the State Appellate Defender, and I'm representing Defendant Scott Spiess. Mr. Spiess was convicted after a jury trial of two misdemeanor counts of violating an order of protection. Count 1 alleged contact with a protected resident, 1616 Moran Drive in Shorewood, Illinois. Count 2 alleged contact with two protected minor parties. Those two parties were two of the Spiess' three children. Spiess was sentenced to the maximum on both counts and immediately released based on time served prior to trial, resolving issues involving his fitness and stand trial. There are two issues on appeal. Issue 2 is an evidentiary issue involving a videotaped interview between Spiess and a Shorewood detective, and I'd be happy to answer any questions about that. However, I will be focusing on Issue 1, in which we ask that this Honorable Court reverse Mr. Spiess' convictions because based on the terms of the order and how it was to be enforced, the evidence is not sufficient to sustain the convictions. The gist of the argument is that the order was not in effect at the time of the violations, but that even if it was, Mr. Spiess was never told exactly how to comply with the order and was never given a reasonable opportunity to comply with the order because while he needed the police to enforce the order, by the plain terms of that order, the police were never going to enforce that order. The order was an emergency order entered at 3.35 p.m. on December 29, 2009, at the time Spiess was living in the family's residence at 1616 Moran and had legal custody of the two minor children. This order and several other orders entered at the same time, were served by four Will County Sheriff's deputies around 12.15, 12.16 a.m. on December 30th. Spiess was asleep when they arrived. They served the orders and then left, leaving Spiess and the minors in the home. They then came back half an hour, 45 minutes later. They asked Mr. Spiess if he had any weapons. The answer was no. And then they left again, again, leaving Mr. Spiess and the children at the home. He woke up around 7.30 a.m., woken up by his children. A little later in the morning, 9, 10 o'clock, he took the children to breakfast at McDonald's, stopping along the way for cigarettes, and then he went to a local bar to ask acquaintances to help him decipher the orders. While he was there, he found out that an Amber Alert had been issued, again, in favor of the children. He contacted the police, let them know where he was and where he was going, and he was arrested at about 11.30 on the 30th on his front porch while he was on the phone with 911. During this time, also before the Amber Alert was issued, he had contacted someone who was associated with the police. We're not sure from the record who that person was, but we know that the detective who conducted the interview later in the day was familiar with this person. And that person simply told Mr. Spiess that the situation seemed strange, but was unable to give Mr. Spiess any reply with the order. Throughout the day, Mr. Spiess was never told that he had to immediately vacate the home. He was never told when he would have to vacate the home, how the various transfers of real property, personal property, and the children would be carried out, how those transfers would work, when they would occur, who or what agency would return to effect the transfers. If no one was coming back, where he was supposed to take the children, when he was supposed to deliver the children to that hypothetical place, and whether he was even allowed to have contact with the children long enough to get them to that hypothetical place. Well, the children were with him when the police came. Correct. The order itself was riddled with typos and contradictions, and it contradicted the other orders that were entered at the same time and for the time of the violations. It set an impossible date for the plenary hearing. It listed the wrong address as the protected residence. Again, the residence was actually 1616 Moran. The order listed 1616 Morin, which again apparently does not exist. The order described his address as the same address, though, his residence as the same, misspelled Morin instead of Moran. Don't you think he could have figured that out? Our position is that it seems obvious, but he's not required to make that step. And the reason he's not required to make that step is because the order needs to be enforced as it's written. I think that's not the best argument, right? I don't think it's the best argument. The argument would disclose the case, and that's why we make the argument. But I mean the typo on the address, right? The typo on the address, no. I think that the expiration date is significant. I think that the plenary order date is slightly less significant. The address obviously is a nine instead of a name. But the point is that because the statute that criminalizes violating an order of protection incorporates the terms of the order into the essential elements of the offense, the actual terms of the order in the criminal context are subject to strict statutory interpretation. How old were these kids? One was two and one was, I believe, six. And that's another problem. He can't leave the kids alone at 1230 in the morning. That would be a separate crime. He can't not feed the kids in the morning. He's expected to feed the kids in the morning. Ultimately, there's no reasonable step that he can take to affect these transfers of the children without the help of law enforcement. Part of the reason that's so difficult, too, is because it's not entirely clear who he's supposed to give the children to. There's a handwritten addendum at the end of the order that says that the minors are to be taken from Spies and returned immediately to petitioner. The petitioner on the petition is his wife. She has custody of the minors based on the order. And the order prohibits these from removing them from her physical care, but then also requires him to hand them over to two women, Patricia Elias and Patricia Hawk, who are the children's grandmothers. And they're actually the primary caregivers in the order. And they also have no contact orders out on him on these other OPs. So he can't take the children away from his wife. He can't give them to the Patricias. It's unclear what he's supposed to do without the help of the police. There are other remedies in the order that are labeled police-enforced. The stay-away remedies that have a zero distance, quote, zero, zero, zero feet away from the non-existent residents and the minors. That's listed as police-enforced. The transfer of the minors is listed as police-enforced. The transfer of the residents, the transfer of personal property, including specifically his clothing and his medications, all of this is police-enforced. And particularly the transfer of the personal property is also ordered to take place at the protected residence in the presence of law enforcement and at the convenience of law enforcement, which means even if he can figure out who to give the children to, if he does so after having taken clothing or his medications after the house, he has technically violated the order. So we see two problems here. One, again, it's our position that the order has to be enforced as written. And one of the consequences of it having to be enforced as written is that Mr. Spies is not required to come to the conclusion that the terms were entered incorrectly. And more importantly, isn't required to speculate on what the terms should have been. And while it may seem like common sense to us that it's just the year that's a typo here, when we're talking about criminal sanctions, Mr. Spies is not required to be bound by that. But more importantly, any sort of speculation that he would make would be impossible anyway. And for those reasons that I just mentioned, the state has never seriously argued that substantial compliance with this order is all that was necessary. So we're talking about strict technical compliance. But he cannot comply without the police stepping in and enforcing these orders. So, for example, as I said before, turning the children over to the petitioner violates the terms of the orders as to the grandparents. Turning them over to the grandparents violates the order as to the petitioner and these other orders. He can't take his clothes. He can't take his medication. He can't leave the children there. There's simply nothing that he can do. And in fact, he was in technical violation as soon as the deputies left the home. Now, the state in its brief has suggested that that isn't true and that Spies could have taken the minors to the police station and simply explained himself to whomever happened to be at the front desk at that time, hoping that they don't arrest him. But in reality, that involves just as much contact as taking them to McDonald's, as taking them to CVS or the bar. There's no exception on the face of the order in terms of having contact with them until he can fulfill these other terms. And then there's also the question of when he would be required to do that. Would he be required to leave the house at 1230 in this scenario? Can he wait until morning? Can he feed the children on the way? Well, by its nature, you would expect an emergency order of protection to be effective immediately. That's why it's an emergency. I would I would agree with that, which is why this case is so confusing to myself as well. But very importantly to Mr. Spies. And I would posit that, you know, I'm very cognizant of the optics of him taking this order to to his friends at the bar, though I would point out that's where he does his business. He's self-employed. He does his paperwork there. But in reality, all he's doing is, again, he's feeding the children and he's making a good faith effort to figure out how to comply with the order. And again, he's been in contact with the authorities multiple times and has gotten no help. Twice with the Will County Sheriffs. Whoever this individual was that he called earlier in the morning, I suspect it's this DCFS caseworker. But we don't have that on the on the record. Again, calling 9-1-1 at least once. And there's some suggestion twice after the Amber Alert came out. Again, the optics are bad, but he made a valiant effort to comply with this order. And it simply wasn't possible without the intervention of law enforcement intervention that was not forthcoming. Thank you. So the bottom line is, again, the order is not in effect. If it is in effect, though, what is he supposed to do? He's never told what to do. And he's never given the opportunity to comply because, again, he requires law enforcement intervention in order to comply. But law enforcement has made it clear to him that they are not going to intervene. So with that, we're asking that this court reverse Mr. Speece's convictions. If anyone has any questions. Thank you. How in the world was this guy going to comply with this order? Middle of the night, they come and serve him with an order that says you can't be by those kids, leave him with the kids, and leave. And so he leaves. They don't say, well, we'll stand by here until somebody can come and pick up the kids and get you away from them. He puts them in the car and goes anywhere. He's in violation of the order. He stays there with them. He's in violation of the order. He leaves them alone. He's a child endangerment. How is he going to comply with this thing? The order of protection did not set forth time. Well, it was an emergency order of protection. If it didn't set in a time, then who's to say he was in violation of it when he got arrested? Well, that is the question that's presented as a fact question to the jury, isn't it? No. Well, it is. Because basically, let's take a look at what he was charged with. He was charged with not so much failing to return the kids. He was charged with giving contact. He wasn't charged with not leaving the house. He was charged with having contact. Basically, he left the house with the kids and he returned. Now, the question is, what you're saying is, because it's labeled an emergency order, which is basically in its part a civil order, and because of the fact that in this case, according to the form that's used, by the way, this form apparently was on a trial judge's computer and is filled out by the trial judge. The state attorney's office has nothing to do with the order of protection. But in filling this out and doing this, you've got these things that police enforce. You've also got in here aspects that say court enforced. Now, exactly what does that mean? I think that under the circumstances, trying to infatuate the idea of what this order is all about, I think the defendant was supposed to take and turn the children over. But he didn't. What is he to take them to? I don't think, under the circumstances, I don't think that he, I think the police, I think everybody gave him an opportunity to comply with the order. The following, in all honesty, I find it hard to believe that if he had taken these kids to the grandparents' house, that he would have been charged, would have been charged in violation of the court order. And then again, the question is, if he had been charged, would the evidence prove him guilty beyond a reasonable doubt for violating the order for compliance? In other words, by complying with the order, I violate the order? I don't, I don't think that that would have been the case. He wasn't charged. In this case, he wasn't charged with not leaving the house at 12.30 and turning the kids over at 12.30. He was charged with the fact that he left at 9 o'clock and turned at 1.30 in the afternoon. He basically was charged with having contact with the children, even though he had more than ample opportunity to turn these children over. And again, as pointed out, and I think if you look at, if you look at counsels and pliability, he makes my exact point. In this case, if he had, if there was any doubt, if he had any doubt, what he would have done is, why didn't he take the children to the police station and explain the situation? Well, four police officers just left this house. Now, it seems to me that what the police should have done was said, hey, look, we've got an order of protection here. You've got to stay away from those kids. And so you're going to have to pack your stuff and go. And they get on the phone, they tell the dispatcher and said, hey, and call his wife or whoever had the order entered and said, hey, lady, you had this order entered. He's here with these kids alone. We're going to stand by until you fetch yourself over here and get them so they're not left alone and then he's leaving. Which is what the order requires. It says that the grant, the physical possession is going to be done police-enforced. Let me ask, I'd like to point out and ask a question, okay? The idea of reading this literally, police-enforced. In other words, the police are going to have to take and enforce the fact that he is a detection felon. How does the court interpret the language? Page 5 of 11. It's got a number 2. Court-enforced. Court-enforced. You know, I think I can explain this and maybe Justice Schmitt can, too, because he was a police officer. But those provisions are when somebody calls in to complain that the defendant has the children, then the police can respond to the report about the children. That is what I have argued in my brief. Reading it literally, saying because it says police-enforced, therefore because they happen to serve the order at 12 o'clock in the morning, they have to take the kids immediately. I think that the impetus of the order here is on what the defendant has said, not what the police failed to do. We have a criminal charge here. And what was the defendant required to do by this order? There are only four things. It's pretty simple. Explain. What are the four things? He's supposed to stay away from the kids. Return the children. He's supposed to have no contact with the children. How can you return them without having contact with them? Help me out on that. Well, obviously you can't. But if you return them as you're required to, how can you return them? He can't return them without having contact with them, can he? Shouldn't he have contact? I mean, this, even if this, I'm sorry, but back in my former job, we would refer to this pinch as CS. Because, I mean, what did the guy do? They left him there. In fact, it was an emergency. They should have taken those kids. He didn't hurt these kids. And even if you can conjure up a technical violation, I don't get this. Well, I think that when we look at order, when we look at what the purpose of this order of protection is, what the impetus of the order is, is what the defendant is required to do. Now, when you say in an order of protection, then what we have to do is we have to do one of two things in an emergency order of protection. We either have to articulate in there that the police are to immediately remove anybody that is there. Or if we require the individual to return something, same thing with the personal property, if you require to return something, okay, but not have contact with it, obviously the two are diametrically opposed. And this is a criminal statute. So he's got to figure this out how he's going to do this and not go to jail? I disagree with that in the sense of it's a criminal statute where the elements are clear. Basically, what he has to do is he has to either do something prohibited or not do something he's required to do. In this case, he was charged with doing something that was prohibited. And the question is, did he do that? Here's a reasonable doubt standard. Did he take and violate the order of protection? That's the only issue that's presented by this case. All this other stuff with respect to strict construction and everything else, I submit is really a non-issue. This is a strictly a reasonable doubt case. And he was in violation the second time they came back. They were there at 1216. They come back later in the same early morning hours. He was in violation then. Had these children been the mother and they delivered that order of protection, are you saying that the police in Sherwood, Illinois would have said, see ya, you too, there's an order of protection. It says you can't be in this house and you can't be by this person, and we're not going to stand by and remove you? The thing is, as I pointed out in my brief, if they had taken the children immediately and or kicked him out immediately, my argument would be the defendant would be here saying, hey, they did not give me an opportunity to comply before they charged me with being in violation. He wouldn't have been in violation. The problem with the case is the officers came back and said, got guns. They didn't come back and say, got kids. No, they didn't. And there was a child there on the couch. My point there is the fact that when I talk about coming back and taking the kids, my point is that they had come back and taken the kids. Because at that point, when they came back a second time, from what you are saying, he was in violation. And if they had arrested him then, okay, at that point, what would he be saying today? I didn't have an opportunity to comply with the order. It's exactly what he says in his reply brief. And that is the problem. That's the reason why I'm saying to take them immediately and to do that, I don't think the order required the police to do that. Well, again, if you could explain to me how he could return those children anywhere without having contact with them, I'll agree with you. I mean, this would be metaphysical. That is true. So then basically, the way Vol-Con is going to have to address their orders are basically, this is, I mean, come on. This isn't the first time the police get this thing. They stand there and say, you've got an order of protection, you can't be by those kids. Here, now, get on the phone, call the dispatcher, get that woman over here that had this order in her, tell her to come pick up her kids. And then tell this guy, now pack the bags and we're going to stand here and you're going to hit the trail. Voila, done. Because we're not going to leave these kids here by themselves at midnight. No, that's true. I'm sure it happens in cities every day, every time. But you hand a guy an order that says you can't be with the kids, you've got to return them without having contact with them, and anywhere you go with them. So what was he doing at 9 o'clock in the morning that he wasn't doing at 2 in the morning? He was still with the kids. There's no evidence that he was hurting them, abusing them, trying to get them away from her, and doing anything with any evil intent or intent to violate this order. Who wouldn't be confused when the police come in, four of them, and say, you are a danger to society, sir. Here's this order that says you can't touch these people, and then you've got the kids sitting there and they turn around and say, bye. Well, if anything comes out of this case, I hope you go back to Will County and say, this is a sloppy order and that was sloppy police conduct, and by golly, you're pretty lucky those children weren't hurt. I hate to think what kind of case it would be. The children that were removed ended up being hurt. That I understand. This is just sloppy work by both the bench and law enforcement, and sometimes we can't fix those things here. Oh, that much I understand, and in the grand scheme of things, what I am looking at from my stand is the fact of when I look at the order and I look at the purpose of the order, and I look at the fact that basically allowing an individual the opportunity to comply with the requirements of the order. Where does the order say that you've got so much time to comply? That's part of what Justice Wright said. It doesn't. What does the order say? You are required to hover in the air 30 feet over these kids for the next week. No one ever said that. You'd say, that's stupid. He can't do that, right? That'd be silly, wouldn't it? Correct. Okay. Well, it's no less silly than saying return these kids without having contact with them. Well, the thing is, and again, I can't dispute the metaphysical aspect of it, but at the same time, I do not think on the facts of this case, because the question is, did he violate the order of protection? Thank you. The question is, did he violate it? What did the evidence show? Basically, he had the opportunity. He didn't. And the fact that there was no time limit put on it, the fact that there was a reasonable amount of time given to him to do so, and he didn't. The question is, did he violate the terms and conditions of this? Whether or not, metaphysically, one could say he could have been charged with this had he done this. Even if he did do this, he could have. I don't think that is the question for the court. I understand the court's concern, and I understand the court's thinking with respect to this kind of an order. I understand. But again, that's not the issue before the court. And I think the issue here is, did he violate it? And I think the other major issue here is the Scrivener's Error, particularly with respect to the date. I think those are the only two issues that this court has to decide, based on the facts, based on this order. That's all that I think is before this court. And regardless of whether this could be drafted better, regardless of whether it could be clearer, regardless of anything else, I think that is the only issue that should drive this court and that should be decided by this court in this case. If the order, though, requires him to do something that it is impossible for him to do, without either physically impossible or being impossible, without violating other laws, then that's another problem, isn't it? If that's the case, then I guess my question to counsel is, can he then be found guilty beyond a reasonable doubt? If the court finds what you just said, I would rather say that this court would be able to find that the defendant could not have possibly violated this and was not proven guilty beyond a reasonable doubt, based on the facts. He could have run out the door after the police left and said, I've got to get out of here, and he could be confined to this corridor and left those kids alone. Well, not only that, but again, taking your honor's lobby to the next level, it didn't say that before he had to vacate the premises, it didn't say which one of these two things he had to do first. So theoretically, he could have complied with the order by leaving the premises and leaving the kids there, although it would have violated another statute or whatever. So how far do we have to go in delineating the order as to what somebody has to do? Do we have to even get down to the point of listing chronologically exactly how he's supposed to do something? No, it does list who's supposed to do what, in terms of the police are supposed to stand by when he gets his personal property, which they did not. I mean, they were in his presence. They were there at the home, and he's supposed to vacate. They didn't do it. They didn't do it. It was in effect at 3.35 p.m. With all due respect, I don't agree with your interpretation that they're supposed to stand and do that. I think what he wants to do is, because it says here, court-enforced personal property. Respondents given his or her personal property, holding, medicine. Now, what is the court supposed to do? Is the court supposed to be... Let's take a look at page 5. Remedies involving property, number 2, court-enforced. Page 6, you continue. Number 2 to number 3 on page 6, it says the police are to do this. So is the court. Number 2, it says that he has given his personal property and that police-enforced personal property shall be transferred at the residence. It says court-enforced. Petitioner is given his clothing, personal adornments, and medicine. Now... But you have to continue to the next page to finish that, where it says the transfer of personal property shall take place in the presence of law enforcement. Right. So it's not the court. Yes, it is. No, it's not. The judge doesn't go to his residence... That's right, it doesn't. ...and give his personal property. But at the time that the police are there, it doesn't mean that they have to do the transfer of the property like then and there. It doesn't say that. It doesn't require that. Well, not the property, but certainly he's sitting there. Again, you talk about time, which to me flies right in the face of the concept of emergency order. Somebody went in and told the judge that I need an order right now because he is a danger to me and those kids, and if you don't get them away from me right now... I can't just... So this whole concept, the way you've got six hours or 24 hours to comply, it's oxymoronic, okay? It doesn't make any sense in that concept. So when you look at what happened in this case, I don't know. I'm just feeling that maybe the citizens of the state of Illinois aren't necessarily sleeping more soundly because of this wonderful arrest and conviction. I don't disagree with you. All that I'm just saying is that basically with the nature of the issue that we have, how you address this and how you decide it can be decided strictly on reasonable doubt standard and strictly on whether or not the order was in effect, the effect of the scrivener's order. And I think that's all that the focus of the court has to be on. I'll take your time. Thank you. Thank you. Thank you. Thank you. Okay, so which argument now do you think is your strongest? Just an exceedingly brief rebuttal here. Just two points. I don't think this case is required to rely on the grace of the state not to prosecute any particular technical violation of this order, which is why, as Justice Schmidt described as isomeronic, some of these problems, why that's significant. And then the other thing that I would point out is this question of what the term police-enforced means, regardless of what discretion that term gives the police, it's very clear, I think, that the police don't have to The court-enforced provisions the police won't go out and handle. It has to be the petitioner who walks into the courtroom and says, Judge, this didn't happen or that didn't happen. So it's court-enforced. Part of the issue here is that, and thank you, Justice Wright, for educating me on that, but no one educated Mr. Schmidt on that. When somebody calls the police department and says he's got the chance, then the police can respond to that call and go out and enforce the order. It's a uniform order that was developed by the Supreme Court years ago. Certainly. The bottom line in this case is the police had the same order and they didn't enforce it. I would agree with that. And so defendants, defenses, I read the same order and I didn't know what to do either. Exactly. Generally speaking, because you're doing something that's illegal and a policeman sees you doing it and doesn't arrest you, that doesn't make it okay. That is, but, so, anyway. You've both done a nice job with a really, really, really sloppy proceeding that started well before either one of you got involved in this case. Thank you, Your Honor. Unless anyone has any questions? We'll be taking the matter under advisement, hopefully rendering the decision without very much delay. Okay.